Bradford, I, along with several other volunteer attorneys, represent Appellant Thomas Rhodes, who as of today has been incarcerated for more than 21 years. We're asking the court to reverse the decisions below and grant Mr. Rhodes habeas relief or in the alternative, and at a minimum, allow Mr. Rhodes to present his evidence at an evidentiary hearing. This case presents an important issue that appears to be one of first impression, at least in the Eighth Circuit, about how we deal with a shift in the scientific evidence, particularly when the original flawed understanding presented at trial reinforced and was reinforced by what we now know to be objectively false water temperature evidence. Our position is that the Constitution leaves room for relief, and as the Third and the Ninth Circuits have held, habeas petitioners can allege a constitutional violation from the introduction of flawed expert testimony at trial if they show that the introduction of this evidence undermined the fundamental fairness of the trial. The evidence that the state presented through Dr. McGee, whose testimony has twice led to exoneration since Mr. Rhodes was convicted, and- Was there any similarity between the testimony given there and the testimony in those cases that you just highlighted to the testimony in this case? The key similarity is that it was flawed. There were obviously different cases- There were no similarities in the flaw. Was there any similarity in the flaw? That the science later, this methodology and the science later turned out to show that the testimony that Dr. McGee presented at trial was wrong. And here's how the testimony- You said objectively false as your key lead in- Objectively- And then you said the water temp. Yes. Dr. McGee's wasn't objectively false. The premise of- I agree with that, Your Honor, to directly answer your question. And this question about what about the cases that you're relying on? Did they involve false or flawed evidence? They involved flawed evidence in that Dr. McGee testified in one case, for example- No, no. Which of your- You were talking about Third Circuit and Ninth Circuit? Oh. Which of those involved flawed and not false? Lee versus Glunt. Was the 2012 case from the Third Circuit that dealt with arson science that had evolved since the time of trial. And then the other case I referred to was Jimenez versus Ochoa. I thought the court said it was almost silly, the prior evidence. And I apologize for interrupting you, Your Honor. But the import there is the court reached that conclusion after an evidentiary hearing, which Mr. Rhodes has never had. And let me put this evidence in context, if I could, for the court, because it's very important to understand the state of affairs in 1998 when Mr. Rhodes was tried for first degree murder. At that time, and this is in the Alexander and Jensen article that we partially rely on, at that time in the 1990s, the assumption was if you have a person who has internal bruising in their neck without any external signs of injury, and that's what we have here, internal injury with no external bruising on the neck, that should always raise the suspicion of foul play. That was the state of affairs. And so when Dr. McGee said those injuries were caused by a hand in the V position, you can read the entire trial record, Mr. Rhodes had no ability to rebut that with scientifically reliable evidence. He does now. He got an evidentiary hearing on the... No. Not at trial, post-conviction. He got an evidentiary hearing on remand of the initial, or first or second, I can't, third, whatever. And I apologize for interrupting, Your Honor. I didn't intend to do that. He did not have an evidentiary hearing on the facts that he has presented in this habeas petition. The Minnesota Supreme Court... I understand that, but he got an evidentiary hearing on the progressing views of the scientists on this question. He did get an evidentiary hearing on different evidence relating to the forensics of drowning, which is different than what the articles here present. The same point. It was just, yeah, he didn't have the... Those, the two particular studies you like now weren't there for that hearing, just opinion. This leads me to the question. What section 2244 case holds, or held, that you get a federal evidentiary hearing for a successive petition because the state court should have granted a hearing under its innocence standard? I'm not aware of one that specifically reaches... I wouldn't think so. ...with that holding, Your Honor. Because, what is it, 2244C, the one that's so negative on evidentiary hearings? 54C, I believe. All right. But you got a huge uphill for the evidentiary hearing. Well, Your Honor... No authority, you just said. Well, but here, the problem with that, Your Honor, is 2244, which is where our petition was dismissed. That's a gateway. And the court said, you've fit through the first gateway. You have new evidence that could not have reasonably been discovered earlier. You've alleged at least cognizable constitutional violations. Where the district court stopped us is 2B2, which is clear and convincing evidence that but for these constitutional errors, no reasonable fact finder would have found the applicant guilty of the underlying offense. What's key about that, Your Honor, is 2244B is a procedural gateway that requires consideration of the facts by the petitioner to be proven as true. And what the district court did here, it adopted the magistrate judge's report and recommendation that said, I'm going to consider what these experts say, but I'm also going to consider the affidavit of Dr. McGee disagreeing with that. That merges, essentially, that prejudges the merits without even getting there. Because 2244 is a procedural gateway that assumes that the petitioner can prove the facts as true. And when you couple the fact that Mr. Rhodes had no ability during his trial to present evidence that there was a scientifically valid alternative cause of the bruising inside the neck with the objectively false water temperature evidence, it is our view that we have satisfied 2244B2, which is that taking even a view in favor of the state of the other alleged evidence, no reasonable jury would have convicted on these facts. And I would urge you to read Justice Anderson's dissent, and I'm sure you have, in the 2012 decision, which summarizes the other evidence. And he says it better than I can. If you take out the internal hemorrhaging and you take out the water temperature evidence, he says, now all we are left with is weak evidence of motive, and it's very weak evidence, conflicting witness testimony regarding relatively innocuous conduct by Rhodes, observations of a boat on Green Lake. But how does that get you a successive habeas federal hearing? Because under 2244B, we have shown, and we will show again at an evidentiary hearing, but we have at least alleged facts  would show that no reasonable fact finder would convict Mr. Rhodes under these circumstances. Imagine back in 1998, the jury heard no conflicting testimony about the internal injuries on Jane Rhodes' neck. What is that jury to do when they hear the state's medical examiner say, this gentleman choked her, and the defendant has no ability to rebut that with a scientifically backed defense? And he does now. And Lee versus Glunt and Jimenez versus Ochoa say, in those circumstances, if you can prove at an evidentiary hearing that the state's expert testimony was flawed, then you have habeas relief. And our point is, we should at least be able to cross-examine Dr. McGee in light of this new evidence. We should at least have the judge hear directly from these experts. And we should at least be able to provide the judge, in context, the import of the water temperature evidence. And let's not forget, the state used the objectively false water temperature evidence to say that this gentleman lied. When the jury hears that, that he lied. That's a big stretch, from my understanding of the facts. Well, Your Honor, I would read. The defense expert agreed that the body wouldn't have resurfaced in, what, less than five days? Assuming a water temperature of 39 degrees. The question that was asked of him. No, no, at 40 feet depth, not temperature. Well, respectfully, Your Honor, we cited the portion of the transcript in our brief. The question that he was asked presumes a water temperature of 39 degrees. He was asked very clearly, I believe on redirect, when you testified that the resurfacing time was five to seven weeks, it was based on? At the evidentiary post-conviction hearing, what was the testimony on that? I thought all the experts, again, agreed. It wouldn't have, if she had been drowned in 40 feet of water, she wouldn't have resurfaced in 13 hours. Isn't that? Respectfully, Your Honor, I disagree. The state's expert did give that testimony at trial. And when he was asked for the basis of that testimony, he said the biggest factor is the temperature. He never got to the other factors. And the temperature now we know to be false. And that allowed the state to argue that this gentleman intentionally misdirected police and first responders where his wife fell in. Who would do that? A guilty man. Who would choke his wife? Somebody who intentionally killed his wife. And both of those now, we have evidence to rebut those. And not only that. Was that the argument made in closing at the trial? I'm sorry? Was that the argument made in closing at the trial? Yes. The state argued that Dr. McGee's testimony established that the internal bruising emerging on the victim's neck had to be the result of compressive force. And I just want to point out one other thing. The magistrate judge in her report and recommendation pointed out equivocations in our experts because they said this could be the result of natural drowning. The point of the experts was not to show that the injuries had to be the result of drowning. The point of the affidavits is to show there's no reasonable scientific way to characterize this death as a homicide. The jury never heard that evidence. The magistrate or district court did not hear that evidence in an evidentiary hearing. And that's what we want. We want to vet this evidence in an evidentiary hearing so that this man, who's been in jail for 21 years in a wholly circumstantial case, can have a fair resolution based on the actual facts. I'll reserve the rest of my time for rebuttal. Thank you, Mr. Bradford. Mr. Frank. Thank you, Your Honor. May it please the court, counsel, my name is Matt Frank. I represent the appellee warden in this case. My intention is to address a factual issue and then a legal issue. I wouldn't normally spend a lot of time discussing facts, but I do think a brief description of some of those facts ties in very clearly and really illustrates the legal flaw that brings us here today. It's wrong to assert that Dr. McGee testified Mr. Rhodes choked his wife. That was not his testimony at all. In all candor, in all fairness, his testimony was there was some pressure applied to her throat that caused these neck hemorrhages. And when he testified, when he was asked, is it possible that it was a hand of the throat, he said, yes, it's possible. He did not say she was choked. He did not say she was hit in the throat. His testimony was properly limited in that way. But more importantly, what he testified, too, about those hemorrhages is that they were in the soft tissues overlying the neck muscles. Not in the neck muscles, but in those soft tissues. Jansen, in his report, based on a study of one elderly gentleman who drowned, was that there can be hemorrhages in the neck muscles. He very clearly talks about hemorrhages in the facial, F-A-S-C-I-A-L, tissues of the muscles themselves. And he postulates that's from struggling during the drowning process. So Jansen's not even talking about the same hemorrhages seen by Dr. McGee when he conducted the autopsy on Jane Rhodes. That is critically important. It's also important to remember here that the magistrate decided the sphere of evidence that can be considered in this context is simply the neck hemorrhage evidence. Was there no other expert? Or are you saying there was one sample? Was there any other expert testimony on there being a separate cause from external force? There was testimony. What I mean about that is there was testimony about the other injuries to her head and her face. And the magistrate and the district court held that because the only new evidence is Jansen's article about neck hemorrhages and Pollinen's article about potential neck injuries and drowning, that this case is now limited to those neck hemorrhages rather than the other injuries she sustained, which were extreme. You simply have to look at the photographs attached to Dr. McGee's affidavit to see that she has massive bruising on both sides of her face that are essentially patterned. But we're only here today, unless this court overrules the magistrate and the district court about that, we're only here about those neck hemorrhages. And the critical thing is that Jansen is talking about different neck hemorrhages in different locations. Dr. McGee simply said there were hemorrhages in those soft tissues that represent some external force applied in her neck area and that it was possible that was done by hand. And now, being here in a federal habeas case, Mr. Rhodes wants to involve this federal court in that factual dispute. And knowing, of course, that to do that, they have to identify a constitutional claim, they've identified a due process claim. And this leads me to my second point about the legal claim. I would ask this court to hold that in a 2244B2B2 gateway issue that that constitutional error that has to be identified as a legitimate constitutional error, even accepting everything the applicant alleges is true. It's not sufficient, it should not be sufficient, to just simply say due process. So what due process claim do they have, have they alleged, that the facts provide a nexus to, a connection to? This court has recognized, certainly, that when a prosecutor presents knowingly false evidence, allows a witness to testify falsely, there's a due process claim there. We don't dispute that. But when it comes to fraudulent or faulty evidence, I would submit there is no finding of a due process violation. Counsel alleges that there is this shift in science. What do you mean by no finding? No precedent? You used the word finding, I don't understand. I'm sorry, that was a poor choice of words, Your Honor. My point is that in order to allege the constitutional error necessary. I understand that. You're saying fraudulent, you're now taking on their assertion that there should be. No, I misspoke, Your Honor. My point is that simply by alleging a difference of opinion, they have not sufficiently pled a constitutional error for this gateway. It can't be enough simply to say due process. And the Jimenez court, the Ninth Circuit, recognized as much. That's the whole battle of experts portion of the Jimenez opinion, which is really interesting to read, that a change of opinion, a difference of opinion, additional opinions, is just standard litigation. It's not a due process violation. Even if that difference in opinion could produce a different result? That's for state courts to resolve, because it's not a constitutional error in the original trial itself. And I've asked the court to hold that for that constitutional error in 2244B2B2 to make that holding, but I don't even think you actually need to get there. Because even if you assume some kind of due process violation, they clearly have not gotten there. And that's in large part because of this factual error that they're making about this neck hemorrhage testimony. Again, they're- What if it had been a federal conviction? And we were talking success of second or success of 2255? If we were in 2255, I would submit that it's even more clear from this court that there has to be something. I think this court used the term nexus. I think the case is Donnell, D-O-N-N-E-L-L. As a second or successive in a federal conviction, you have to establish a nexus between the facts and the claim. That's one of the post-ACCA cases, the career criminal cases, trying to get the retroactive application of Johnson. I admit that that is a different section than what we're dealing with, but- OK, but what's the claim that require it? In that case, he- If this was a 2255, what would we be talking about as the claim? Well, this would be the same claim, I think, in a 2255. But you started out with the predicate for this discussion was a fraudulent evidence claim. I don't think they're making a claim of fraudulent evidence. That's when I misspoke. They're close on Chandler. I don't think they've got it on McGee. And Chandler's testimony was an assumption. But let's take McGee. So what would the federal claim requiring a nexus be if this was a successive 2255? For a federal due process claim? Yeah. I think that, other than the Ninth Circuit, there would have to be a demonstration that the prosecutor knew it was false. But would it be actual innocence? What would it be? Actual innocence, well, of course, could be a standalone claim as a gateway. Here, it would, I simply think, is folded into the last requirement that no reasonable juror would have found them guilty except for the constitutional error. Is there a federal constitutional claim for flawed evidence that would stand up in a successive 2255? Not that I'm aware of, Your Honor. Not either. But they're asserting there should be. I certainly would concede that when the prosecution plays a part in that. But what if there is? If you look at the Lee case, it's fascinating. I mean, the US attorney, I mean, the states attorneys there conceded. I think they used the term superstition in that case. I mean, you sit back, you look at that case and think, what was going on there? I mean, that's a much different case than we have here. In a federal conviction, I agree, but that doesn't get our hands around what the claim is. I don't, quite frankly, know that there is a sufficient claim here, Your Honor, to get through this gateway. I mean, the point is, they want to say due process, but they also come to you and say, we know more about possible causes. I don't know how that translates to a due process violation in the trial itself, particularly where we're talking about different hemorrhages, and particularly where not one of their experts, as the magistrate recommended, has disproved what Dr. McGee testified to. And with regard to the water temperature evidence, which was an assumption by the witness that was not disputed by the defense expert, it would have made no difference in the trial itself. So the- Well, what would Rhodes 4 have been considering if it was a federal, if it was not in the state? The state court considered actual innocence under the state standards for actual innocence, right? The newly discovered evidence, yep. The newly discovered evidence test for getting through the statute of limitations in state court has an innocence component to it. Yep, absolutely. Now, if they had been writing under 2255, what would they, they would have been talking about? What, a standalone actual innocence claim under federal? I think you could compare that to what the magistrate did here, in one sense, because the Minnesota Supreme Court has- Well, I don't think the magistrate stopped with the gateway. I'm more worried about whether the state, at what point, how do we look at whether the state Supreme Court in Rhodes 4 violated clearly established federal constitutional law that would generate a successive or qualify for successive habeas relief? I don't think the court- I don't see the brief getting their hands around that. Because this is gateway. So that issue doesn't become pertinent until we get through the gateway and get to the merits of the underlying 2245. What Supreme Court case do I read for this gateway? Well, I mean, case versus hatch is the 10th Circuit case that the magistrate followed that process. I think this court has also pointed out that in Bennett and Johnson, this is a gateway to get through in- Let me rephrase. Has the Supreme Court ever engaged in this gateway analysis, to your knowledge? Not to this extent, Your Honor, that I'm aware of. Not to this extent that I'm aware of, no, Your Honor. And so- That's what's confusing me. Yeah. So, I mean, this court has said that this is clearly- 2244 has two gateways, really three. This court gave initial authorization as the first. Then there is this step. It's two gateways, I'm sorry. And then this step is purely gateway before you consider the merits of the petition at all. Now, in this case, the merits is, quite frankly, not going to look much different than we are. But this is a merits decision. What the Minnesota Supreme Court did in Rhodes IV is, in the end, said, even if they came forward with groundbreaking science, even if we can say that about this, it doesn't change the fact that there's all this other evidence supporting the conviction. And that's, of course, a classic defendant wants to parse out individual pieces of evidence and attack it without looking at the fact that for how many days the jury in this case sat and watched all the evidence in one sitting and in one entire context and made this decision, the Minnesota Supreme Court really twice has said all that other evidence was more than sufficient, as did the initial federal district court here. The thing about the water temperature, again, it's not the only evidence about where she went in the water and where she came up. Because there's evidence in the record about, you know, it's 40 feet deep where he told searchers she went into the water. He used a very reliable landmark, a water tower in downtown Spicer. Her body washed up 9 tenths of a mile up the shore, near the area where witnesses heard about that night and screams. It's not just the water temperature that went into showing he misled the searchers. And so, again, we can't pare out individual pieces of evidence when we're looking at that question of, has he demonstrated no reasonable fact finder would have found him guilty if they had heard, in this case, testimony about the actual water temperature and possible hemorrhages in a neck that are not the same hemorrhages that were seen in this neck. So we submit to the court that they have not identified an actual constitutional error, that even if this court relies on some formulation of a due process claim about difference of opinion later, they have not even gotten to that point. And certainly, we agree with the district court's determination that there's plenty of other evidence to support the conviction. And we would respectfully request that the court affirm the lower court's decision. Thank you. Thank you, Mr. Frank. Mr. Bradford. Thank you, Your Honor. Four quick points in the time I have remaining. Chief Judge, you asked, I think is your first question, was there any other evidence presented at trial as to an alternative explanation for the hemorrhaging in the neck? And you got an answer, but it wasn't a direct answer. The answer is no. And that's the whole point here, is because the scientific evidence necessary to put that defense on didn't exist at the time. Number two, the argument was made that the Janssen article is talking about different hemorrhages in the neck, muscular as opposed to soft tissue. That is precisely the type of stuff that can be vetted at an evidentiary hearing. The source of that is the affidavit from Dr. McGee that he put in in opposition to our federal habeas petition. We haven't had a chance to cross-examine Dr. McGee on that, and that's precisely the point. We have seven expert forensic pathologists  the new scientific understanding, and the evidence presented at trial. And they say this is precisely the mechanism that is described in those articles. The government says that this new evidence is based on one sample. Is that accurate? That's inaccurate. There are actually two different studies. The Pollinen study, I believe, was one, and the Alexander and Janssen study was multiple subjects. Number three, there was an allegation that all we've done is say the words due process without actually articulating what the violation is. And I quoted earlier, and I won't do it again, from the Jimenez versus Ochoa case in the Ninth Circuit, which is 2016, and then the Lee versus Glunt case in 2012, both of which hold that flawed scientific evidence can establish a constitutional violation for grounds for a habeas petition. The response on the water temperature is we didn't know it was false when we presented it. And with respect, the due process clause is not meant to punish the state for intentionally producing false evidence. It's intended to protect the defendant and ensure a fair trial. Intent shouldn't matter in this context. And lastly, the characterization of this as a mere difference of opinion is inaccurate. This is not seven new forensic pathologists coming in and saying we've re-reviewed the trial record and we simply disagree with Dr. McGee. What they are saying is, in light of these new studies, which now show that you can get internal hemorrhaging in your neck, there is no reliable way to characterize this death as a homicide. All of them say we would never have done that. And if the jury had heard that evidence, based on a reasonable doubt standard, no reasonable jury would convict under these circumstances. Thank you for your attention to this matter. We appreciate it. Thank you, Mr. Bradford. Thank you also, Mr. Frank. The court appreciates the argument you've provided to the court today, the briefing which you've submitted, and we will take the case under advisement.